Floyd B. HUTTON, Anna V. Hutton, Plaintiffs–Appellees,

v.

Sheriff Thomas STRICKLAND, Individually and as Sheriff of Holmes County, Florida, Defendant–Appellant.

No. 90–3080.

United States Court of Appeals, Eleventh Circuit.

Dec. 27, 1990.

Keith C. Tischler, Parker, Skelding, Labasky & Corry, Tallahassee, Fla., for defendant-appellant.

George E. Day, Day & Meade, P.A., Fort Walton Beach, Fla., for plaintiffs-appellees.

Before FAY and BIRCH, Circuit Judges and HENDERSON, Senior Circuit Judge.

BIRCH, Circuit Judge:

This case examines the qualified and absolute immunity status of Holmes County, Florida, Sheriff Thomas Strickland, defendant-appellant. Plaintiffs-appellees Floyd B. Hutton and Anna V. Hutton were arrested by local sheriff's officers when they attempted to repossess ranch property, which they contended reverted to them through recordation of a quitclaim deed because the new owners had defaulted on the terms of the land sale contract. The district court denied Strickland's motion for summary judgment on the issues of qualified and absolute immunity. Our review of the record reveals that Sheriff Strickland was entitled to qualified immunity, but that he properly was denied absolute immunity. We, therefore, reverse in part and affirm in part the district court's denial of summary judgment as to these immunity issues and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 16, 1984, Floyd and Anna Hutton, husband and wife, conveyed property known as Reedy Creek Ranch in Holmes County, Florida, to Hobie W. Laws and his wife, Kimberly G. Laws. The Laws simultaneously signed a quitclaim deed, which was held in escrow at a local bank. The land sale contract provided that the purchasers' failure to pay the balance of the down payment by December 2, 1985, or otherwise to be in default, would enable the Huttons to remove the quitclaim deed from escrow and to record it in lieu of instituting foreclosure proceedings.

On June 24, 1985, the Laws were arrested for trafficking in marijuana because they were discovered to be growing on the ranch approximately sixty acres of corn interspersed with large cannabis plants, estimated to weigh in excess of ten thousand pounds. Incident to the arrests, officers from the Holmes County Sheriff's Department (Sheriff's Department) confiscated various machinery and other personal property. The officers also plowed under the marijuana fields, displacing the topsoil. Upon learning of the arrests, the Huttons became concerned regarding possible destruction of the ranch property and the confiscated personal property in which they had an interest.

Furthermore, the Huttons were notified by the insurance company on June 27, 1985, that the Laws had not maintained insurance on the ranch, constituting a default under the land sale contract. On approximately July 1, 1985, the Florida circuit court released Kimberly Laws, a/k/a Kimberly Bowen, on bond. The circuit court directed that she return to the ranch pending trial at a time when it was aware that the Huttons claimed an interest in the

property.[1] The Sheriff's Department also released most of the confiscated personal property. The Huttons removed the quitclaim deed from escrow and recorded it on July 9, 1985.

With increasing concern regarding possible damage to the ranch, the Huttons contacted the Sheriff's Department and various local officials to obtain assistance in repossession. Sheriff Strickland testified by affidavit that he informed the Huttons that the Sheriff's Department could not assist them in regaining possession of the property. Upon inquiry, the assistant state attorney, who had worked with the Sheriff's Department during the marijuana trafficking investigation, advised the investigating officer and Sheriff Strickland that the Huttons' quitclaim deed gave them a colorable claim to title. This assistant state attorney testified, however, that he had never practiced civil law, that he had no experience with foreclosure actions, and that he had little understanding of the difference between a right to title and a right to possession.[2] The Huttons' attorney advised them that their quitclaim deed did not enable them to take possession of the property and that foreclosure proceedings first must be completed.

In possession of the quitclaim deed and accompanied by two friends, the Huttons attempted to retake the ranch by self-help on July 19, 1985. They cut the chain lock on the front gate and drove past a "No Trespassing" sign on their way to the house. The Huttons told Kimberly Laws to vacate the property; she asked the Huttons to leave. When the Huttons refused to go, Kimberly Laws summoned the Sheriff's Department.

Several patrol cars were dispatched to the ranch. The officer in charge examined the cut lock on the front gate and saw a pair of bolt cutters and .22 caliber rifle in the flatbed of the Huttons' truck. After talking with the Huttons and Kimberly Laws, the officer radioed Sheriff Strickland, who instructed him to arrest the Huttons for trespass.[3]

After receiving instructions from Sheriff Strickland, the officer escorted the Huttons from the ranch and arrested them for trespassing. They were taken to the station, where they were booked and their truck was searched. Approximately two hours later, the Huttons were released.

On July 23, 1985, the Huttons sued the Laws in the Florida Circuit Court for the Fourteenth Judicial Circuit. They alleged that the Laws had defaulted on the land sale contract and wrongfully were retaining possession of the property. The Huttons sought possession of the ranch and certain personal property, damages, and attorneys' fees. Pursuant to a hearing and allowing the defendants an opportunity to

---

1. See R3–98–2 (district court summary judgment order). Additionally, Robert Hendry, who was the chief investigating officer in the marijuana case involving the Laws and the arresting officer for the Huttons' trespass, testified at his deposition that "Ms. Bowen [Kimberly Laws] moved back out on the property. It [personal property seized when the Laws were arrested for marijuana trafficking] was released from court and an agreement was made that she could live there on the property. So she put her own locks on the gates. If I wanted to go out there, I had to call her, to talk to her." Deposition of Robert Hendry at 14. R3–84.

2. Deposition of Allen L. Register at 22. R3–84. The assistant state attorney testified that he had handled trespass charges and that he was familiar with the trespass statute. Id. at 22–23. Given at his deposition the hypothetical of an individual entering upon posted property by break-

ing a lock and remaining on the property after the owner in possession had told the intruder to leave, the assistant state attorney testified that these facts would constitute a trespass. Id. at 23. He also testified that he was uncertain whether his conversations with the investigating officer and Sheriff Strickland occurred before or after the Huttons were arrested. Id. at 19–20; see infra note 14 (discussion of the distinction between a colorable claim to title and a right to possession).

3. Prior to oral argument, Sheriff Strickland denied having spoken with anyone at the scene or instructing that the Huttons be arrested. He claimed that he was unaware of the arrests until after they occurred. To remove any factual dispute on this issue for appellate purposes, his counsel conceded at oral argument that Sheriff Strickland did instruct that the Huttons be arrested for trespass.

obtain insurance on the ranch, the state court entered an order finding that the defendants had acquired insurance and that they would be permitted to remain on the ranch pending further order of the court.

On December 4, 1985, the state court entered final judgment in favor of the Huttons, and ordered a judicial sale of the property. Without foreclosure proceedings, the court held that the quitclaim deed executed by the Laws was insufficient legally to reconvey the property to the Huttons. The court, however, permitted the Huttons to amend their complaint to include the allegation that the Laws defaulted on the land sale contract by failing to make a payment due on December 1, 1985. Based on this default, the state court entered judgment for the Huttons in the amount of $394,191.65, plus costs and interest. Thereafter, the Huttons took possession of the ranch.

Alleging violations of 42 U.S.C. § 1983, the Huttons filed this suit against Sheriff Strickland in the United States District Court for the Northern District of Florida. In his answer, Sheriff Strickland asserted qualified immunity as an affirmative defense. The district court subsequently denied Sheriff Strickland's initial motion for summary judgment because of the existence of genuine issues of material fact, but permitted leave to renew the motion at the conclusion of discovery. The district court granted in part and denied in part Sheriff Strickland's renewed motion for summary judgment, denying his motion as to the

issues of qualified and absolute immunity.[4] In its one sentence devoted to denying qualified immunity to Sheriff Strickland, the district court relied on its probable cause discussion and did not identify the facts that it considered or its analysis in concluding that qualified immunity was inapplicable to Sheriff Strickland.[5] On interlocutory appeal, the only issues before this court are the district court's denial of Sheriff Strickland's qualified and absolute immunity status. This case has been stayed by the district court pending our ruling.

## II. DISCUSSION

### A. Jurisdiction

 A district court's denial of a summary judgment motion based on qualified immunity is an exception to 28 U.S.C. § 1291, establishing our review of final decisions of district courts. *See Hudgins v. City of Ashburn*, 890 F.2d 396, 402 (11th Cir.1989). The Supreme Court has determined "that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."[6] *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). The qualified immunity shield protects government officials performing discretionary functions from civil damages "insofar as their conduct does not violate *clearly established statutory or constitutional rights* of which a reasonable person would

---

4. The district court granted Sheriff Strickland's summary judgment motion as to the due process claims and denied his motion as to absolute and qualified immunity and probable cause. R3–98.

5. The district court's order denies summary judgment on qualified immunity as follows:

> Qualified Immunity.
> The discussion of probable cause also reflects that there are genuine issues of material fact remaining as to whether a reasonable officer would have known that the Huttons had clearly established rights to possession of the ranch or personal property, and that the arrests and search of the Huttons violated the

Huttons' clearly established constitutional rights.
R3–98–25.

6. The Court has reasoned that a district court's denial of a qualified immunity claim is an appealable interlocutory decision included within the collateral order doctrine because it is separable from the merits of the case and capable of conclusive determination. *Mitchell v. Forsyth*, 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2814–17, 86 L.Ed.2d 411 (1985); *see Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467–68, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978); *Hudgins*, 890 F.2d at 402; *Rich v. Dollar*, 841 F.2d 1558, 1560 (11th Cir.1988).

have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (emphasis added). The Court has created the qualified immunity exemption because public officials must have protection from damage suits in order to execute their responsibilities independently and without liability threats, provided that their conduct is not unlawful. *Harlow,* 457 U.S. at 806, 102 S.Ct. at 2732; *Hudgins,* 890 F.2d at 402; *see Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir.1989); *Edwards v. Gilbert,* 867 F.2d 1271, 1273 (11th Cir.1989).

 The particular public official's entitlement that the Court has sought to protect is an immunity from suit; as in the case of absolute immunity, this entitlement would be lost if the case were tried erroneously. *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815; *Rich v. Dollar,* 841 F.2d 1558, 1560 (11th Cir.1988). "Therefore, a district court's denial of qualified immunity is immediately appealable." *Hudgins,* 890 F.2d at 402; *Clark v. Evans,* 840 F.2d 876, 879 (11th Cir.1988). As a procedural matter, qualified immunity must be pled by the defendant official as an affirmative defense. *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2736; *Hudgins,* 890 F.2d at 402; *Rich,* 841 F.2d at 1563. Jurisdiction is appropriate in this case because Sheriff Strickland pled qualified immunity as an affirmative defense. The operative legal question is whether Sheriff Strickland, after learning the facts, was incorrect in advising his officer to arrest the Huttons for trespassing when they attempted to take possession of the ranch occupied by Kimberly Laws. *See Hudgins,* 890 F.2d at 403.

**B. Summary Judgment Review**

Since jurisdiction for denial of a qualified immunity claim must be based on an issue of law, our review is *de novo. Id.; Rich,* 841 F.2d at 1561; *see Mitchell,* 472 U.S. at 530, 105 S.Ct. at 2817. Significantly, we perform summary judgment analysis first "in order to determine that material factual questions do not exist as to the identified legal issue." *Hudgins,* 890 F.2d at 403; *see* Fed.R.Civ.P. 56(c). The presence of genuine issues concerning material facts relating to the implicated legal issue indicates that the district court properly denied summary judgment and that we are without jurisdiction because the case must be tried for resolution of the factual questions. *Hudgins,* 890 F.2d at 403.

The Supreme Court specifically has directed our review of a district court's denial of summary judgment based on qualified immunity:

> An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, in cases where the district court has denied summary judgment for the defendant on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established law, whether the law clearly proscribed the actions the defendant claims he took.

*Mitchell,* 472 U.S. at 528, 105 S.Ct. at 2816.

 Using this Supreme Court instruction, our court has required a defendant to establish that his entitlement to summary judgment as a matter of law through qualified immunity is warranted and that no genuine issues of material fact relevant to the implicated legal questions exist. *Rich,* 841 F.2d at 1562; *see Hudgins,* 890 F.2d at 403; Fed.R.Civ.P. 56(c). To avoid summary judgment, an opposing plaintiff must demonstrate either that the defendant is not entitled legally to qualified immunity or show a genuine issue of material fact that impinges upon a decisive question of law. *Rich,* 841 F.2d at 1562 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)); *Hudgins,* 890 F.2d at 404; *see* Fed.R.Civ.P. 56(e). Similar to the opposition of any summary judgment motion, the plaintiff may not rely on the facts contained in the complaint, but must raise genuine issues of

material fact to counter the facts supporting a defendant's summary judgment motion based on qualified immunity. *Rich,* 841 F.2d at 1562 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)); *Hudgins,* 890 F.2d at 404; *see* Fed.R.Civ.P. 56(e). After adequate time for discovery, Rule 56(c) mandates that a summary judgment motion be granted

> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

### C. Qualified Immunity Analysis

 To prevent the determination by district courts of subjective good faith in the conduct of defendant government officials, the Supreme Court established its objective-reasonableness test for determining qualified or good faith immunity in section 1983 actions. *Hudgins,* 890 F.2d at 404; *Rich,* 841 F.2d at 1563; *see Harlow,* 457 U.S. at 815–19, 102 S.Ct. at 2736–39. The *Harlow* test evaluates the particular official's action against " 'clearly established law,' " which consists of statutory or constitutional rights that a reasonable person should have known. *Rich,* 841 F.2d at 1563 (quoting *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738). This objective-reasonableness test affords broad qualified immunity protection to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *Hudgins,* 890 F.2d at 402; *Edwards,* 867 F.2d at 1273.

Deriving the order of proof allocation from *Zeigler v. Jackson,* 716 F.2d 847 (11th Cir.1983) (per curiam), this circuit in *Rich* formulated a two-part analysis for applying the objective-reasonableness test for qualified immunity:

1. The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."

2. Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional law."

*Rich,* 841 F.2d at 1563–64 (quoting *Zeigler,* 716 F.2d at 849); *Hudgins,* 890 F.2d at 404.

 Applying the *Zeigler/Rich* objective-reasonableness test to this case, we first must determine whether the officers, acting at the direction of Sheriff Strickland, were performing duties within the scope of their discretionary authority when they arrested the Huttons for trespass and later searched their truck. *See Hudgins,* 890 F.2d at 404. A government official proves that he acted within the purview of his discretionary authority by showing " 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.' " *Rich,* 841 F.2d at 1564 (quoting *Barker v. Norman,* 651 F.2d 1107, 1121 (5th Cir. Unit A July 1981)); *Hudgins,* 890 F.2d at 404. Upon receiving a telephone plea from Kimberly Laws, who stated that the Huttons forcibly had entered and refused to leave the ranch property, the Sheriff's Department definitely had a responsibility to investigate. When the officers arrived and noticed that the lock on the gate had been cut and that the Huttons had bypassed the "No Trespassing" sign, they had evidence that the Huttons were trespassing on the property. Furthermore, the obvious bolt cutters and rifle in the Huttons' truck indicated that they forcibly had entered the ranch property and that they might exert additional force to compel Kimberly Laws to vacate the premises so that they could take possession of the ranch. These objective circumstances make apparent that the officers and Sheriff Strickland

were acting well within their respective discretionary authority when the Huttons were arrested and, subsequently, their truck was searched.

██] Under the *Zeigler/Rich* test, the burden shifts to the Huttons to demonstrate lack of good faith or violation of clearly established statutory or constitutional law in their arrest and the search of their truck. *See Hudgins,* 890 F.2d at 405; *Barts v. Joyner,* 865 F.2d 1187, 1190 (11th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989). *Rich* has divided this second component of the objective-reasonableness test into two analytical subparts. *Rich,* 841 F.2d at 1563–64 (citing *Mitchell,* 472 U.S. at 528, 105 S.Ct. at 2816); *Hudgins,* 890 F.2d at 405. First, the court must determine whether the applicable law was clearly established when the governmental action in question occurred. *Rich,* 841 F.2d at 1563–64 (citing *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738); *Hudgins,* 890 F.2d at 405. Second, the court must decide whether there is a genuine issue of fact regarding the government official's engaging in conduct violative of the clearly established law. *Rich,* 841 F.2d at 1563–64 (citing *Mitchell,* 472 U.S. at 528,

105 S.Ct. at 2816); *Hudgins,* 890 F.2d at 405.

"Clearly established," with reference to a right that a government official allegedly has violated, means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Section 810.09, Florida Statutes, defines misdemeanor trespass as the unauthorized and uninvited entry on property which is posted; the offender's refusal to leave after being ordered to do so constitutes a misdemeanor of the first degree.[7] *See R.C.W. v. State,* 507 So.2d 700 (Fla.Dist.Ct. App.1987). Additionally, section 810.115, Florida Statutes, makes willfully cutting a fence enclosing another's property a first-degree misdemeanor.[8] When the trespass offense is accompanied by possession of a tool or implement used to commit the crime or when the offender is armed with a firearm or other dangerous weapon during the commission of a trespass, the offense may become a felony under sections 810.06 and 810.09(2)(c), Florida Statutes.[9] Furthermore, under section 810.12(1), Florida Statutes, the unauthorized entry onto posted

---

7. In pertinent part, section 810.09, Florida Statutes states as follows:

 **Trespass on property other than structure or conveyance.—**
 (1) Whoever, without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance as to which notice against entering or remaining is given, either by actual communication to the offender or by posting, fencing, or cultivation ... commits the offense of trespass on property other than a structure or conveyance.
 ....
 (2)(b) If the offender defies an order to leave, personally communicated to him by the owner of the premises or by an authorized person, or if the offender willfully opens any door, fence, or gate or does any act which exposes animals, crops, or other property to waste, destruction, or freedom, or trespasses on property other than a structure or conveyance, he is guilty of a misdemeanor of the first degree....
 § 810.09(1), (2)(b), Fla.Stat. (1985).

8. **Breaking or injuring fences.—**Whoever willfully and maliciously breaks down, mars, in-

jures, or cuts any fence, or any part thereof, belonging to or enclosing land not his own, or whoever causes to be broken down, marred, injured, or cut any fence belonging to or enclosing land not his own, shall be guilty of a misdemeanor of the first degree....
§ 810.115, Fla.Stat. (1985).

9. The commission of a trespass with an implement or firearm may elevate misdemeanor trespass to a felony under the following Florida Statutes:

 **Possession of burglary tools.—**Whoever has in his possession any tool, machine, or implement with intent to use the same, or allow the same to be used, to commit any burglary or trespass shall be guilty of a felony of the third degree....
 § 810.06, Fla.Stat. (1985).
 **Trespass on property other than structure or conveyance.—**
 ....
 (c) If the offender is armed with a firearm or other dangerous weapon during the commission of the offense of trespass on property other than a structure or conveyance, he is guilty of a felony of the third degree....
 § 810.09(2)(c), Fla.Stat. (1985).

land is prima facie evidence of the intention to commit an act of trespass.[10]

The Huttons have not contested that the property was posted with a "No Trespassing" sign, that the ranch was in Kimberly Laws' actual possession, that she did not give them permission to enter, that she had asked them to leave, and that they had remained on the property. Furthermore, the Huttons obviously entered onto the ranch property by force with complete disregard of the "No Trespassing" sign. The gate lock had been cut and bolt cutters and a rifle were in their truck. The officers, who arrived on the scene, could have determined that the Huttons had committed the elements of trespass based on the ostensible facts: "(1) that the property was owned by or lawfully in possession of someone other than the defendant [offender]; (2) that the defendant willfully entered the property; (3) that the defendant was on the property without authorization, license, or invitation; and (4) that notice not to enter had been given to the defendant by actual communication." *State v. McCormack,*

517 So.2d 73, 74 (Fla.Dist.Ct.App.1987) (per curiam). There are no factual issues regarding the Huttons' committing all of the elements of a trespass.

 Florida law permits a law enforcement officer to make a warrantless arrest when an individual has committed a felony or misdemeanor in the presence of the officer, when a felony has been committed and the officer reasonably believes that the individual committed it, or when the officer reasonably believes that a felony has been or is being committed and that the person to be arrested has committed or is committing it.[11] Probable cause exists when the facts and circumstances at the time of arrest would cause a prudent or reasonably cautious person to believe that the accused committed the offense.[12] *Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975); *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949); *see Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989) ("As in other Fourth Amendment contexts,

10. **Unauthorized entry on land; prima facie evidence of trespass.—**
 (1) The unauthorized entry by any person into or upon any enclosed and posted land shall be prima facie evidence of the intention of such person to commit an act of trespass. § 810.12(1), Fla.Stat. (1985).

11. In the following situations, a Florida law enforcement officer may make an arrest without a warrant:

 **When arrest by officer without warrant is lawful.—** A law enforcement officer may arrest a person without a warrant when:
 (1) The person has committed a felony or misdemeanor or violated a municipal or county ordinance in the presence of the officer. An arrest for the commission of a misdemeanor or the violation of a municipal or county ordinance shall be made immediately or in fresh pursuit.
 (2) A felony has been committed and he reasonably believes that the person committed it.
 (3) He reasonably believes that a felony has been or is being committed and that the person to be arrested has committed or is committing it. § 901.15(1)–(3), Fla.Stat. (1985).

12. The district court found that the facts of this case were "tailored" to the offense of misdemeanor trespass as defined by section 810.09,

Florida Statutes, and recognized that probable cause is "measured at the time of the arrest." R3–98–14, 15. Yet, the district court denied summary judgment on the issue of probable cause. In our conclusion that qualified immunity is applicable, we necessarily have found that probable cause existed for the arrest of the Huttons and the search of their truck. "The existence of probable cause ... is an absolute bar to a section 1983 action for false arrest." *Marx v. Gumbinner,* 905 F.2d 1503, 1505–06 (11th Cir.1990). The issue as to whether there was or was not probable cause on the undisputed facts presented in this case was not raised formally in appellant's notice of appeal or in the briefs filed with this court. R3–99. We have found that probable cause existed at the time of arrest in this case. Since probable cause analysis is embraced within the context of our consideration of the qualified immunity issue, under the law of the case doctrine in this circuit, any issue with respect to probable cause remaining in the district court should be controlled by our determination of the applicability of qualified immunity. *See Heathcoat v. Potts,* 905 F.2d 367, 370–71 (11th Cir.1990) (per curiam); *Sales v. State Farm Fire & Casualty Co.,* 902 F.2d 933, 935–36 (11th Cir.1990); *Litman v. Massachusetts Mut. Life Ins. Co.,* 825 F.2d 1506, 1510–11 (11th Cir.1987) (in banc), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 652 (1988); *Wheeler v. City of Pleasant Grove,* 746 F.2d 1437, 1440 (11th Cir.1984) (per curiam).

..., the 'reasonableness' inquiry ... is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."); *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990) ("When the facts are not in dispute, whether probable cause existed is a question of law, and summary judgment is appropriate."). The temporary seizure and inventory of the contents of the Huttons' truck were incident to a lawful arrest, an established exception to the Fourth Amendment requirement of a warrant.[13] *See South Dakota v. Opperman*, 428 U.S. 364, 375–76, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976); *United States v. Laing*, 708 F.2d 1568, 1570 (11th Cir.) (per curiam), *cert. denied*, 464 U.S. 896, 104 S.Ct. 246, 78 L.Ed.2d 235 (1983). We conclude that the arresting officers, called to the ranch by Kimberly Laws, had obvious factual evidence that a trespass by the Huttons had occurred and, bolstered by Sheriff Strickland's instruction, were following clearly established statutory and constitutional law when they arrested the Huttons and inventoried the contents of their truck.[14] Sheriff Strickland's instruction to arrest the Huttons is inconsequential because the officers had probable cause to arrest the Huttons when they arrived on the scene to which they were summoned, and Sheriff Strickland merely verified appropriate action under Florida law.

Having determined that the arresting officers were acting under clearly established law, we must decide whether the Huttons have shown a genuine issue of fact regarding the officers' engaging in conduct violative of the applicable law. The Huttons have argued that their entry onto the ranch property was not a crime because they lacked the willful intent to commit an unlawful act. Because of the Laws' default on the land sale contract, the Huttons claim that their possession of the recorded quitclaim deed entitled them to possession of the ranch; therefore, Kimberly Laws was not occupying the property lawfully.

The Huttons' beliefs concerning the legality of their entry onto the ranch property are irrelevant to qualified immunity analysis, which examines the conduct of the subject government officials only. Moreover, the purpose of qualified immunity would be defeated if courts were to ascertain and analyze the subjective thoughts of government officials instead of basing judicial decisions on objective actions resulting from surrounding circumstances. Even if the Huttons and the arresting officers had not known that the

---

**13.** The search and inventory of the truck contents, particularly the bolt cutters and the rifle, also are supported by the "plain view" and "automobile" exceptions to the warrant requirement, the latter of which recognizes the inherent mobility and the diminished expectation of privacy in automobiles. *See United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Holland*, 740 F.2d 878 (11th Cir. 1984) (per curiam), *cert. denied*, 471 U.S. 1124, 105 S.Ct. 2654, 86 L.Ed.2d 271 (1985).

**14.** We additionally note that vicarious liability may not be the basis for recovery against a sheriff for acts of his subordinates under section 1983, unless he was involved personally. *Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120, 123 (5th Cir.1980); *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir.1979) (per curiam); *see Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 706 (11th Cir.1985) (The sheriff at the time that medical care was refused to a pretrial detainee could not be held liable unless the plaintiff could establish that the sheriff was involved personally in acts depriving the inmate of his constitutional rights, that he breached a duty imposed by state law and this breach caused the plaintiff's injury, or that he had established a policy or custom requiring inmates to acquire court orders before obtaining medical services.); *McLaughlin v. City of LaGrange*, 662 F.2d 1385, 1388 (11th Cir.1981) (per curiam), *cert. denied*, 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982) (Summary judgment was appropriate for a police chief whose officers were accused of police brutality because the police chief was not involved personally.); *Watson*, 611 F.2d at 123 (The suit against the sheriff properly was dismissed because the sheriff was not involved personally in the plaintiff's jailing and commitment. The court found that he had delegated responsibility for the criminal functions of his office to his chief investigator, and that he did not learn of the plaintiff's incarceration and subsequent commitment until after these actions had occurred.).

circuit court had ordered Kimberly Laws to remain on the property pending resolution of the ownership of the ranch, the obvious presence of the elements evidencing the commission of misdemeanor trespass warranted the arrest of the Huttons when the officers arrived at the ranch.

In making probable cause decisions, law enforcement officers are not charged with knowing legal technicalities and nuances, but with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar*, 338 U.S. at 175, 69 S.Ct. at 1310; *Marx*, 905 F.2d at 1507. The state court's subsequent determination that the Huttons' quitclaim deed was insufficient to constitute a possessory right entitling them to self-help is not pertinent to determining the validity of the Huttons' arrest, when the assistance of the Sheriff's Department had been requested by Kimberly Laws and the Huttons' forced entry onto the property in violation of Florida trespass statutes was evident.[15] *See Marx*, 905 F.2d at 1507 ("That a defendant is subsequently acquitted or charges are dropped against the defendant is of no

consequence in determining the validity of the arrest itself.").

In *Bodzin v. City of Dallas*, 768 F.2d 722 (5th Cir.1985), the Fifth Circuit upheld officers' probable cause determination for the warrantless arrest of a man attempting to obtain petition signatures from passers-by based on the complaint of a grocery store manager that the man was on store property and would not leave upon request, although the man actually was on public property. The court refused to require the arresting officers to make a determination of property lines when apparent probable cause existed:

> Bodzin [plaintiff-appellant] contests the conclusion that under the undisputed facts the arrest was supported by probable cause. Bodzin first says that as a matter of law, the officers could not have reasonably believed him to be trespassing without first ascertaining the location of the property line from official sources, and thus did not have probable cause to believe that he was on private property. He essentially proposes this search as an additional element of probable cause in such property cases. We decline to engraft such a universal insis-

---

**15.** Florida law is clear that a quitclaim deed does not establish a possessory right until after a foreclosure proceeding; there is considerable difference between holding a colorable claim to title and a right to possession. *See Martyn v. First Fed. Sav. & Loan Ass'n,* 257 So.2d 576 (Fla.Dist.Ct.App.), *cert. denied,* 262 So.2d 446 (Fla.1972) (A mortgagee, such as the holder of a quitclaim deed, has no right to possession of the property until purchase at a foreclosure sale.); *Mid–State Inv. Corp. v. O'Steen,* 133 So.2d 455 (Fla.Dist.Ct.App.), *cert. denied,* 136 So.2d 349 (Fla.1961) (A deed contract, which required monthly payments and gave the holder an option to declare forfeiture and to repossess the property on default, was a mortgage subject to mortgage foreclosure rules and gave the deed holder no legal right to repossess the real property or personal property within the home.). The Huttons' quitclaim deed did not present a novel or confusing situation under Florida property law. They necessarily had to go through a foreclosure proceeding before they had a right to possession. Although we do not hold a sheriff to the knowledge of a Florida circuit judge for qualified immunity analysis, Sheriff Strickland gave proper direction under Florida property law and the assistant state attorney, admittedly unfamiliar with real property law, reached an incorrect conclusion.

We emphasize, however, that the sheriff's qualified immunity status in this case is not determined under Florida property law, but under the state trespass statutes. Prior advice regarding the Huttons' possessory rights and the subsequent judicial confirmation that they did not have possessory rights are irrelevant. This case is determined solely on whether the officers had probable cause to arrest the Huttons under the Florida trespass statutes when they arrived at the ranch pursuant to Kimberly Laws' call for help. We have discussed herein that the elements of trespass were apparent upon the officers' arrival and that Sheriff Strickland, when contacted, verified that the Huttons' arrest was appropriate. We additionally note that, even if qualified immunity in this case were to be decided on the basis of unclarified property law, or any unsettled law, then qualified immunity would be accorded to the implicated government officials because they cannot be held responsible for violations of statutory or constitutional law that is not clearly established. *Hudgins,* 890 F.2d at 406 n. 18; *Rich,* 841 F.2d at 1564–65; *see, e.g., Clark,* 840 F.2d at 882–84; *Muhammad v. Wainwright,* 839 F.2d 1422, 1424–25 (11th Cir.1987); *Daniel v. Taylor,* 808 F.2d 1401, 1403–05 (11th Cir.1986) (per curiam); *Sellers v. United States,* 709 F.2d 1469, 1470–71 (11th Cir.1983) (per curiam).

tence upon the essentially ad hoc inquiry into probable cause. ... "Certainly we cannot expect our police officers to carry surveying equipment and a Decennial Digest on patrol; they cannot be held to a title-searcher's knowledge of metes and bounds or a legal scholar's expertise in constitutional law."

*Id.* at 725 (quoting *Saldana v. Garza*, 684 F.2d 1159, 1165 (5th Cir.1982), *cert. denied*, 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983)). We similarly will not hold Sheriff Strickland or the arresting officers to knowledge of property law in determining probable cause. We also note that this case is stronger than *Bodzin* because the Huttons' forcible entry onto and refusal to leave the ranch property sufficiently alarmed Kimberly Laws that she might be in imminent physical danger in addition to her trespass concern. She, therefore, called for assistance from law enforcement officers to resolve this trespass and breach of the peace. The situation had escalated from discussion regarding possessory rights to the Huttons' forcible entry onto the ranch property; the officers were acting under the exigencies of the immediate situation.

■ We conclude that the officers, acting at Sheriff Strickland's direction, were performing duties within the scope of their discretionary authority when they arrested the Huttons for trespass and inventoried the contents of their truck. The Huttons have not shown that the arresting officers' conduct violated clearly established law or that genuine issues of fact exist regarding the officers' actions in violation of clearly established law. Other than to instruct and agree with his officers' conduct, Sheriff Strickland was not involved personally in the Huttons' arrest or the search of their truck. The determinative facts, however, concern the apparent evidence of the Huttons' trespass at the ranch when the officers arrived in response to Kimberly Laws' call. Sheriff Strickland verified that the officers legally were authorized to make warrantless arrests and to search the Huttons' truck incident to their arrest. We hold that Sheriff Strickland is entitled to qualified immunity in his personal capacity.

## D. Absolute Immunity Analysis

■ The Eleventh Amendment bars claims by an individual "against one of the United States." U.S. Const. amend. XI. The Supreme Court additionally has held that the Eleventh Amendment does not preclude suits against local governments in federal court. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280–81, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977); *Gamble v. Florida Dept. of Health & Rehabilitative Servs.*, 779 F.2d 1509, 1512–13 (11th Cir.1986). This court specifically has recognized that the Eleventh Amendment does not prevent an award of damages against a county. *Lundgren v. McDaniel*, 814 F.2d 600, 605 n. 4 (11th Cir.1987). Included under Eleventh Amendment coverage, however, are suits where the plaintiff has not named the state as a defendant, but seeks damages that would be paid from the state treasury. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *see Gamble*, 779 F.2d at 1513.

■ In section 1983 actions, this court has determined that Florida sheriffs are county officials as opposed to state officials. *Hufford v. Rodgers*, 912 F.2d 1338, 1341–42 (11th Cir.1990); *Lundgren*, 814 F.2d at 605 n. 4; *see Lucas v. O'Loughlin*, 831 F.2d 232, 234 (11th Cir.1987), *cert. denied*, 485 U.S. 1035, 108 S.Ct. 1595, 99 L.Ed.2d 909 (1988); *see also Bailey v. Wictzack*, 735 F.Supp. 1016, 1019 (M.D.Fla. 1990) ("[U]nder Florida's constitutional scheme, a county has an existence independent of the state and the sheriff is a county rather than a state official."). A suit regarding official capacity is "in all respects other than name, to be treated as a suit against the [governmental] entity," and the law governing the liability of the governmental entity under section 1983 determines the liability of the particular official. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Geter v. Wille*, 846 F.2d 1352, 1354 n. 1 (11th Cir.1988), *cert. denied*, 488 U.S. 1043, 109 S.Ct. 870, 102 L.Ed.2d 994 (1989). While evidence that a custom or policy at-

tributed to the implicated official may establish official capacity liability, such allegations have not been advanced in this case.[15] *See Geter,* 846 F.2d at 1354–55; *see also Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978) (A local government is responsible under section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury...."). Not only is Sheriff Strickland a county official, but also there has been no contention in this case that a potential judgment against Sheriff Strickland in his official capacity would be paid from the state treasury rather than from county funds. *Lundgren,* 814 F.2d at 605 n. 4; *see Travelers Indem. Co. v. School Bd.,* 666 F.2d 505, 509 (11th Cir.), *cert. denied,* 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982). Accordingly, we conclude that the district court properly denied Sheriff Strickland absolute immunity in his official capacity.

## III. CONCLUSION

Based on our reasoning herein, we REVERSE the district court's denial of Sheriff Strickland's summary judgment motion as to his qualified immunity status, and we AFFIRM the district court's denial of summary judgment as to his absolute immunity status. We REMAND this case to the district court for further proceedings consistent with this opinion.

---

**15.** Supervisory or official capacity liability also can occur when the supervising official participates in the alleged deprivation. *Geter,* 846 F.2d at 1355. Because we have discussed thoroughly Sheriff Strickland's tangential personal involve-ment in the Huttons' arrest for trespass in our analysis of his qualified immunity, we will not reiterate, but instead reference, that discussion here.'