Michael Anthony MLADEK, Lisa Mladek, and Christopher James Mladek, by and through his Next Friends, Plaintiffs,

v.

Charles Lewis DAY, in his Individual Capacity, Defendant.

No. 3:03–CV–10 (CDL).

United States District Court,
M.D. Georgia,
Athens Division.

June 7, 2004.

Wayne Hampton Basford, Marietta, GA, for Plaintiffs.

Theodore Freeman, Andrea S. Hirsch, Atlanta, GA, for Defendant.

## ORDER

LAND, District Judge.

Defendant Charles Lewis Day has filed a Motion for Summary Judgment. That motion is granted for the reasons given in the remainder of this Order.

## INTRODUCTION

This case demonstrates the proclivity of American citizens today to search for legal causes of action to redress every imaginable wrong. As we commemorate the 60th anniversary of the Allied's invasion of Normandy during World War II, the Court must decide in this case whether the rights those thousands of American soldiers fought and died for on the beaches of France include legal recourse for a sprained wrist suffered by someone who was arrested for, and subsequently convicted of, the obstruction of a law enforcement officer.[1]

This case arises from a simple call to law enforcement by a stepfather searching for his fifteen year old stepson. Although the stepson returned safely, his homecoming was not a joyous occasion. Instead, he arrived just in time to witness an argument between his mother and stepfather that escalated into an altercation between the stepfather and the law enforcement officer who answered the call for the missing boy. The altercation culminated in the officer's arrest of the stepfather for obstruction of a law enforcement officer. While taking the stepfather into custody, the officer handcuffed him, spraining the stepfather's wrist in the process.

With an injured wrist from the handcuffing, the stepfather insisted that his rights had been violated. Consequently, he hired a lawyer to vindicate those rights notwithstanding his plea of guilty to a misdemeanor charge of obstructing the law enforcement officer. His lawyer dutifully filed a lawsuit against the arresting officer, the sheriff, and the county. Plaintiffs' Amend-

---

1. In the early pre-dawn hours of June 6, 1944, (now commonly referred to as "D-Day"), the Allied Forces began their European invasion by dropping thousands of brave paratroopers into the fields of northern France. These paratrooper drops were followed at dawn by the transport of approxi-

mately 130,000 soldiers to five beaches, code-named Omaha, Utah, Gold, Juno, and Sword, which spanned fifty miles of Normandy's coastline. It is estimated that three thousand soldiers sacrificed their lives that day to defend freedom.

ed Complaint was peppered with a potpourri of various alleged constitutional violations, including alleged violations of the Fourth, Eighth, and Fourteenth Amendments. Leaving no stone unturned (and no cause of action unalleged), Plaintiffs also asserted various theories of liability under Georgia state law.[2]

The Court has previously whittled down Plaintiffs' all encompassing cornucopia of alleged constitutional violations to one remaining federal claim against the arresting deputy, Defendant Charles Lewis Day ("Deputy Day"), in his individual capacity.[3] Deputy Day has now moved for summary judgment on this remaining claim. For the following reasons, the Court grants Defendant's motion. Since this final stroke eliminates all of the federal remnants of Plaintiffs' Amended Complaint, the Court declines to exercise supplemental jurisdiction over the remaining state law claims, which are accordingly dismissed without prejudice.

## DEPUTY DAY'S ALLEGED UNCONSTITUTIONAL CONDUCT

A more detailed examination of the facts, which the Court construes in the light most favorable to Plaintiffs, demonstrates that Plaintiffs' unfortunate predicament does not give rise to a cause of action under federal law. On February 6, 2001,

Plaintiff Michael Mladek ("Mr.Mladek") called law enforcement upon discovering that his fifteen year old stepson had left Mr. and Mrs. Mladek's residence without permission. Defendant Charles Day, a deputy sheriff with the Walton County Sheriff's Department, responded to Mr. Mladek's phone call. After speaking with Mr. Mladek, Deputy Day drove to the home of the stepson's natural father. Deputy Day returned to the Mladek home after being unable to locate the boy. A short time later, Mrs. Mladek drove onto the property with the missing stepson. While Deputy Day was speaking to the boy in his patrol car, the Mladeks started arguing outside their home. At no time during their argument did either of the Mladeks threaten or attempt to inflict any physical harm, nor were their voices raised to an extent that the argument interfered with Deputy Day's interview of the stepson.

In an attempt to calm the tense situation, Deputy Day approached the couple and instructed Mr. Mladek to go inside his house. Mr. Mladek, apparently offended by this instruction, refused to immediately comply with Deputy Day's order. In response to Mr. Mladek's lack of cooperation, Deputy Day pushed Mr. Mladek three times. Mr. Mladek responded by informing Deputy Day that he was going inside the house to call for additional law enforcement because he believed Deputy Day's behavior to be unlawful.[4] As Mr.

---

**2.** Plaintiffs' Amended Complaint asserts state law claims for battery, negligence, loss of consortium, and intentional infliction of emotional distress.

**3.** In its Order dated November 20, 2003, the Court granted the motions to dismiss each of Plaintiffs' federal law claims against each of the other Defendants. The Court concluded that Plaintiff failed to state a claim against any of the Defendants for a violation of the Eighth or Fourteenth Amendments. Regarding Plaintiffs' Fourth Amendment excessive force claim, the Court further found that the county, Sheriff Yarbrough in his official capacity, and Deputy Day in his official capacity

were entitled to immunity under the Eleventh Amendment pursuant to the rationale of *Manders v. Lee*, 338 F.3d 1304 (11th Cir.2003). The Court also found that Sheriff Yarbrough was entitled to qualified immunity as to Plaintiffs' claims against him in his individual capacity. Therefore, the only remaining pending claims are Plaintiffs' Fourth Amendment excessive force claim against Day in his individual capacity and Plaintiffs' state law claims.

**4.** There is some dispute concerning the extent of Mr. Mladek's resistance to Deputy Day. Deputy Day contends that Mr. Mladek physi-

Mladek was using his telephone, Deputy Day entered the house without a warrant and handcuffed Mr. Mladek's right wrist. Mr. Mladek contends that Deputy Day then "violently and forcefully yanked, pulled and slung" Mr. Mladek by his wrist, "causing serious and substantial physical and nerve injuries." Deputy Day then cuffed Mr. Mladek's other wrist and took him to the Walton County Jail, where Mr. Mladek was placed in a cell. When his handcuffs were removed, Mr. Mladek requested medical attention for his wrists, which were bruised, swollen, and cut. In response, Deputy Day pushed Mr. Mladek against a wall and rudely told him that he would not summon a doctor. Other "John Doe" defendants who were allegedly employed by Defendant Walton County witnessed Deputy Day's treatment of Mr. Mladek. Mr. Mladek asked them to get a doctor, but they allegedly refused. Mr. Mladek was given an icebag for his wrist the following morning, and was released later that day. Mr. Mladek was later diagnosed as suffering an acute sprain in his wrist. On December 13, 2001, Mr. Mladek pled guilty to a misdemeanor offense of obstruction of an officer.[5]

## DISCUSSION

◼ "Summary judgment is appropriate only if there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Defendant Day's Mo-

tion for Summary Judgment raises three basic issues for the Court's consideration: (1) whether the record establishes as a matter of law that Deputy Day only used *de minimis* force when handcuffing Mr. Mladek and, therefore, committed no constitutional violation; (2) whether Deputy Day is entitled to qualified immunity even if he used excessive force in violation of the Constitution; and/or (3) whether by pleading guilty to a misdemeanor charge of obstructing an officer, Mr. Mladek has forfeited his Fourth Amendment claim under the rationale of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).[6] Finding that no reasonable jury could conclude that Deputy Day used unconstitutionally excessive force, the Court grants Deputy Day's Motion for Summary Judgment. Alternatively, the Court also finds that even if Deputy Day's use of force were determined to be unconstitutionally excessive, Deputy Day would nevertheless be entitled to summary judgment because of his qualified immunity. In light of these rulings, it is not necessary to encounter the less settled waters of *Heck.*

### *The Alleged Constitutional Violation*

◼ The Fourth Amendment guards against both unlawful arrest and the use of excessive force during arrest. *See Durruthy v. Pastor,* 351 F.3d 1080, 1093 (11th Cir.2003). No matter the severity of the

---

cally threatened him by raising his fist as if to strike him, an allegation denied by Mr. Mladek. There is no dispute, however, that Mr. Mladek was verbally resisting Day's actions and used profane language during the resistance. Viewing the facts in the light most favorable to Plaintiffs, the Court construes the evidence to show that Mr. Mladek was only verbally resisting Deputy Day's actions.

5. O.C.G.A. section 16–10–24(a), the statutory provision which Mr. Mladek admits violating, reads as follows:

(a) .... [A] person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor.

6. Under *Heck,* a § 1983 claimant who is contesting the lawfulness of government action that, if declared unlawful, would render a conviction or sentence invalid must first expunge the underlying criminal conviction. 512 U.S. at 486–87, 114 S.Ct. 2364.

underlying crime for which the arrest is being made, every officer may use some force in carrying out a custodial arrest. *See id.* at 1094. When determining whether an officer used excessive force in the course of an arrest, the Court "must evaluate a number of factors, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Lee v. Ferraro*, 284 F.3d 1188, 1197–98 (11th Cir.2002) (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

 In the case *sub judice*, the Court finds that the evidence, taken in the light most favorable to Plaintiffs, fails to establish any use of excessive force by Deputy Day. The record establishes that Mr. Mladek was guilty of obstructing Deputy Day. The conduct for which he was arrested resulted in a guilty plea, thus confirming the illegality of his resistance. Notwithstanding Mr. Mladek's painful sprained wrist, the Court does not find that the circumstances in this case rise to the level of a constitutional violation. *See Rodriguez v. Farrell*, 280 F.3d 1341 (11th Cir. 2002). The Constitution does not require that a law enforcement officer use mom's gentle touch or display refined manners when taking someone into custody. The Court finds that no reasonable jury viewing Deputy Day's actions could conclude that Defendant Day's actions constituted excessive force under the Fourth Amendment to the United States Constitution.[7] Accordingly, Defendant Day is entitled to summary judgment.

*Defendant's Qualified Immunity*

 Even if the Court found that a genuine issue existed as to whether Deputy Day's use of force against Mr. Mladek violated Mr. Mladek's constitutional rights, Deputy Day must still prevail because of his qualified immunity. Defendant Day is immune from suit in his individual capacity, unless he violated "'clearly established law,' which consists of statutory or constitutional rights that a reasonable person should have known." *Hutton v. Strickland*, 919 F.2d 1531, 1537 (11th Cir.1990) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1560 (11th Cir.1988)); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (internal citations and quotations omitted). Considering the current case law, which gives a general boundary between acceptable and excessive force used during a custodial arrest, the Court finds that Deputy Day has carried his burden of showing that his conduct toward Mr. Mladek did not violate any clearly established constitutional right. Consequently, Deputy Day is entitled to qualified immunity.

**7.** The Court notes that Plaintiffs have submitted the affidavit of Carl C. Forrester, a Law Enforcement Training Officer, who opines that Deputy Day used excessive force when handcuffing Mr. Mladek. Deputy Day objects to the Court's consideration of the affidavit on the grounds that the affidavit was submitted untimely and that the question of whether excessive force was used is a matter of law exclusively within the province of this Court. The Court finds Mr. Forrester's affidavit does not bolster Plaintiffs' otherwise weak constitutional claim sufficiently to create a genuine issue of material fact.

## CONCLUSION

The Court finds that no jury could reasonably conclude that Deputy Day's conduct constitutes a violation of Mr. Mladek's constitutional right to be free from excessive force. The Court alternatively finds that Deputy Day is entitled to qualified immunity. Accordingly, summary judgment is granted in favor of Deputy Day on Plaintiffs' remaining Fourth Amendment claim against Deputy Day in his individual capacity.

Having now disposed of all of Plaintiffs' federal law claims asserted in this lawsuit, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. Those claims are therefore dismissed without prejudice.