[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11318
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cv-02202-ODE

VENUS JONES,
individually, and as next friend of her minor children
Briana Jones and Derrion Pryor and
Omaree Pong Hwan Jones,

Plaintiff-Appellant,

versus

J. WALSH,
ANGELA MORRISON,
DONALD SIMS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 29, 2017)

Before WILLIAM PRYOR, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Venus Jones appeals the summary judgment against her complaints of a false arrest and excessive force, in violation of the Fourth and Fourteenth Amendments, and false imprisonment and intentional infliction of emotional distress, in violation of state law. *See* 42 U.S.C. § 1983. We affirm.

## I. BACKGROUND

Jones's complaint stemmed from a police investigation instigated by her emergency call to the Rockdale County Sheriff's Office. Jones reported that her neighbors had threatened her family and brandished a gun, and during the conversation, the dispatcher heard a gunshot. The dispatcher told officers that there were "shots fired" in the proximity of Jones's residence, but they were not told who had reported the incident.

Deputy Angela Morrison was the first to arrive on the scene and approached Jones's fifteen-year-old daughter, Briana Jones, who was sitting on her front porch. Morrison asked Briana about the gunshots, and Briana gestured for the officer to talk to her neighbors. While Morrison was talking to Jones's neighbors, Deputy Donald Sims arrived and overheard the neighbors state that Jones had threatened them, had "pulled a gun on them," and had four guns in her house. Morrison radioed the information about the Joneses to incoming officers.

Sims and a third officer proceeded to Jones's house. The officers drew their service weapons and ordered the occupants to exit the house with their hands in the

air. Five persons walked out, including Briana, Jones, Jones's fourteen-year-old son, Derrion Pryor, and Jones's youngest child, Omaree Jones, who was eight or nine years old. The officers instructed everyone to lie on the ground, but Jones refused to comply until the officers averted their guns from Omaree. Omaree was not handcuffed and reentered the house.

The officers' supervisor, Sergeant Jonathan Walsh, arrived to see the officers handcuff Jones, Briana, and Derrion and then help them get to their feet. Walsh had been apprised of the situation by overhearing the radio transmissions from dispatch and from Morrison as he drove to the scene. Walsh instructed the officers to remove the Joneses' handcuffs.

Jones, Briana, and Derrion wore handcuffs no longer than seven minutes. They reentered their house and wrote statements describing their neighbors' conduct. The Joneses acknowledged that the officers touched them only as needed to apply and remove their handcuffs and to help them to stand.

Jones sued Deputies Morrison and Sims and Sergeant Walsh. Jones alleged that she and her children were bruised by the handcuffs, but they did not seek medical attention for their injuries. Jones later testified that the officers yelled and cursed needlessly as Jones and her children exited their residence and that she refused to lay on the ground until the officers "[g]et the gun from my baby head, because we called [911], and if they didn't, they was going to have to shoot me."

3

The officers moved for summary judgment on the basis of qualified and official immunity, which the district court granted. The district court ruled that the officers acted reasonably by detaining Jones and her two children briefly at gunpoint in their front yard to ensure they did not pose a danger to the officers as they investigated the origin of the gunfire. The district court also ruled that the Joneses' complaints about false imprisonment and the infliction of emotional distress failed in the absence of evidence that the officers acted with malice.

## II. STANDARD OF REVIEW

We review *de novo* a summary judgment. *Croom v. Balkwill*, 645 F.3d 1240, 1245 (11th Cir. 2011). We view the evidence in the light most favorable to the non-moving party. *Id.* Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and . . . is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. DISCUSSION

Jones contends that the officers were not entitled to immunity for three reasons. First, Jones argues that she and her children were subjected to an unlawful arrest. Second, Jones argues that the officers' use of weapons amounted to excessive force. Third, Jones argues that "a jury could infer that [the officers] acted with malice." We reject these arguments in turn.

4

The officers are entitled to qualified immunity from Jones's claim of unlawful arrest. Officers "enjoy a qualified immunity from suit that protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Croom*, 645 F.3d at 1245–46 (internal quotation marks and citation omitted). Officers do not offend the Fourth Amendment by detaining a person briefly as part of an investigation "if they have a reasonable articulable suspicion based on objective facts that the person has engaged in criminal activity." *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995). Based on the information provided by dispatch and by neighbors that Jones voiced threats while wielding a gun and possessed several firearms, the officers reasonably suspected the Joneses of criminal activity and could detain them temporarily to verify or dispel those reasonable suspicions. *See United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002) (holding that a 911 call reporting gunshots and arguing constituted exigent circumstances that justified a warrantless entry into the defendant's residence). "Police may take reasonable action, based upon the circumstances, to protect themselves during [investigatory] encounters, or to maintain the status quo." *United States v. Kapperman*, 764 F.2d 786, 790 n.4 (11th Cir. 1985). The imminent danger posed by an unknown number of suspects and weapons made it reasonable for the officers to order Jones, Briana,

5

and Derrion to exit their home and to handcuff them. *See Blackman*, 66 F.3d at 1576 (holding that federal agents acted reasonably by ordering four persons suspected of armed robbery to exit an apartment with their hands up and to handcuff them to complete their investigatory detention). The officers did not violate a clearly established constitutional right that the Joneses be free from an unreasonable seizure.

The officers also are entitled to qualified immunity from Jones's claim of excessive force. Officers are permitted to draw weapons "when approaching and holding individuals for an investigatory stop . . . when reasonably necessary for protecting an officer or maintaining order." *Courson v. McMillian*, 939 F.2d 1479, 1494–95 (11th Cir. 1991); *see also Blackman*, 66 F.3d at 1576. In *Courson*, we held that an officer "used no reasonable force" by displaying a shotgun while ordering three persons suspected of drug activities to lie on the ground. *Id.* at 1496. Presented with an equally precarious situation, the officers' decision to display their weapons to the Joneses was a reasonable response to "the exigencies of the immediate situation," *id.* (quoting *Hutton v. Strickland*, 919 F.2d 1531, 1542 (11th Cir. 1990)). The officers reasonably feared for their safety based on their proximity to a house they suspected might contain several firearms and the potential for the situation to escalate in the light of Jones's refusal to cooperate. The officers' use of their weapons did not violate the Joneses' clearly established constitutional rights.

The officers also are immune from liability for the Joneses' complaints of false imprisonment and the intentional infliction of emotional distress. Under Georgia law, an officer is entitled to official immunity for discretionary acts unless he "act[s] with actual malice or with actual intent to cause injury." Ga. Const. art.1, § 2, ¶ 1. "[A]ctual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact." *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999) (internal quotation marks and citations omitted). Malice can be inferred from an officer's conduct, "[b]ut unreasonable conduct does not support such an inference" nor does "[e]ven recklessly illegal conduct." *Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016). "Actual malice is a demanding standard: it requires an officer to act with a deliberate intention to do a wrongful act." *Id.* (internal quotation marks and citation omitted). The Joneses identify no evidence suggesting that the officers acted with actual malice. Because no material factual dispute exists about the presence of malice, the officers were entitled to summary judgment based on official immunity.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Deputies Morrison and Sims and Sergeant Walsh.