846 F.2d 1352
 Jessie GETER, Administratrix of the Estate of Thomas Geter,
Jr., Deceased, Plaintiffs-Appellees,
v.
Richard WILLE, Sheriff of Palm Beach County and Gerald
Toles, Director of Corrections of Palm Beach
County, Florida, Defendants-Appellants.
 No. 87-5498.
 United States Court of Appeals,
Eleventh Circuit.
 June 14, 1988.
 
 James C. Barry, West Palm Beach, Fla., for defendants-appellants.
 Jack W. Smith, Dothan, Ala., for plaintiffs-appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before FAY and VANCE, Circuit Judges, and HOFFMAN*, Senior District Judge.
 FAY, Circuit Judge:
 
 
 1
 Thomas Geter tragically died while an inmate in the Palm Beach County Jail. Geter claimed that he was unable to swallow and refused to eat or drink, literally starving himself to death. Geter's mother brought a 42 U.S.C. Sec. 1983 ("Section 1983") action against the Palm Beach County Sheriff and the Director of Corrections. She did not sue defendants individually or join to the suit any other parties having direct contact with Geter while he was in custody. The plaintiff prevailed at trial and the defendants appealed. The primary issue before this Court is whether the district court should have directed a verdict for these defendants. Because we find error, we reverse.
 
 I. BACKGROUND
 
 2
 In June of 1980, Thomas Geter was being held at the Palm Beach County Jail ("jail") on charges of first degree murder and sodomy. Suspecting mental problems, the court appointed a psychiatrist to examine Geter. The psychiatrist concluded that Geter was incompetent to stand trial and suggested further evaluation. The sheriff's office then sent Geter to the North Florida Evaluation and Treatment Center at Gainesville where doctors diagnosed him as suffering from chronic undifferentiated schizophrenia. By September, 1981, Geter was in remission, and judged competent to stand trial. The sheriff's office then returned him to jail.
 
 
 3
 While Geter was in custody awaiting trial, he was totally dependent upon the Palm Beach County Sheriff's Office for medical care and help. The sheriff's office furnished a nursing staff and paid for a physician who was an independent contractor. The applicable regulations and policy gave the contract physician the authority to make all medical decisions at the jail.
 
 
 4
 Upon Geter's return, the jail's medical personnel gave him a physical examination and found him to be in good physical health. In late March, 1982, Geter began to complain to officers and nurses that he had a sore throat and could not swallow. The jail's contract physician diagnosed the condition as tonsillitis and treated it accordingly. But even after Geter recovered from his tonsillitis, he continued to complain that he could not eat.
 
 
 5
 Geter's physical condition visibly deteriorated. Geter had weighed 183 pounds when he first arrived at the jail, but when the doctor treated him for tonsillitis he weighed 159.5 pounds. By April 14, Geter's weight had dropped to 144 pounds.
 
 
 6
 When the doctor determined that he could find no medical reason why Geter could not swallow, he scheduled Geter for examination by a private throat specialist. This physician also could not find any physical reason for Geter's inability to swallow, therefore, he ordered x-rays taken of Geter's esophagus. Geter refused the x-rays, claiming he was unable to swallow the necessary barium.
 
 
 7
 On April 23, 1982, Geter's weight had fallen to 136 pounds. Due to his weakened condition, it was not possible to weigh Geter after April 26. On April 28, he was clearly dying and the jail's doctor sent him to Good Samaritan Hospital. Geter died the next day. According to medical records, a number of physical ailments brought on by the failure to eat or drink caused his death.
 
 
 8
 Jessie Geter, the decedent's mother, brought this action under Section 1983. Plaintiff chose to name only the Sheriff and the Director of Corrections of Palm Beach County, Florida as defendants. In addition, she only brought the claim under Section 1983 and thus sued them solely in their official capacities. The gravamen of her Section 1983 complaint is that defendants knowingly, willfully, and negligently failed to provide for Geter's medical needs while he was in their custody. The jury awarded compensatory damages of $50,000 and punitive damages of $100,000. Defense counsel had moved for a directed verdict, and after the jury's decision to award damages, moved for a judgment notwithstanding the verdict, but the district court denied both motions.
 
 II. DISCUSSION
 
 9
 Appellants contend that the trial court should have directed a verdict in their favor. Appellants argue that none of the evidence presented by the plaintiff established liability under Section 1983. They claim that at trial plaintiff did not demonstrate any causal connection between them and the events leading to plaintiff's injuries. Appellants contend that without such a showing, plaintiff cannot prevail.
 
 
 10
 In this case plaintiff attempted to establish that the employees of the sheriff's office and the contract physician were negligent and violated Geter's constitutional rights. Plaintiff did not sue the physician or other involved medical employees, but only their superiors. Appellants claim that plaintiff based this action on a theory of respondeat superior, and that the trial court erred when it permitted a judgment for the plaintiff under this doctrine.
 
 
 11
 Plaintiff maintains that she did not prevail based on a respondeat superior theory, but that the jury found there existed a policy of callous indifference toward Geter evidenced by the doctor's order to return Geter to his cell when he was too weak to be weighed. Supervisory officials cannot be held liable for the acts of employees solely on the basis of respondeat superior. McLaughlin v. City of LaGrange, 662 F.2d 1385, 1388 (11th Cir.1981). However, a local government[1] is liable under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury...." Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978). See also Hearn v. City of Gainesville, 688 F.2d 1328, 1334 (11th Cir.1982).
 
 
 12
 There is simply no evidence in the record showing that either the sheriff's office or the jail had any policies, customs, or usages relating to the events that led to Geter's death. Without any evidence that the supervisory employee participated in or condoned the alleged deprivations, there can be no Section 1983 liability for the acts of the subordinates.[2]
 
 
 13
 Supervisor liability is also permitted in those incidents in which the supervisor personally participates in the deprivation. Goodson v. City of Atlanta, 763 F.2d 1381, 1389 (11th Cir.1985). But nothing in the record demonstrates that appellants personally participated in the allegedly unconstitutional treatment of Geter. Plaintiff's only reference to Gerald Toles is the stipulation which states that he was the Director of Corrections, and that the jailers and medical staff other than the contract physician reported to him. The record is void of any other pleadings or evidence linking Toles to Geter's death.
 
 
 14
 The plaintiff's case against Sheriff Wille has similar problems. During a deposition Wille conceded that he is ultimately responsible for the management and conduct of the jail and that all of the participants, except the contract physician, ultimately reported to him. The record, however, does little, if anything, to show that Sheriff Wille was in any way involved in any mistreatment of Geter.
 
 
 15
 Plaintiff argues, and the trial court concluded, that the defendants are liable because they had the right to control the jail and all of relevant personnel except the jail's physician, who was an independent contractor. The Sheriff and the Director of Corrections do have authority over the actions of the medical personnel involved. We note, however, that "the mere right to control without any control or direction having been exercised ... is not enough to support Sec. 1983 liability." Monell, 436 U.S. at 694 n. 58, 98 S.Ct. at 2037 n. 58. There is no evidence that the Sheriff or Director of Corrections exercised control over Thomas Geter's situation. Without any proof in the record, Wille and Toles cannot be held liable under this theory.[3]
 
 III. CONCLUSION
 
 16
 The series of events leading to Geter's death were unquestionably tragic. The jury, apparently consumed by this misfortune, wanted to make someone pay for what happened to Geter. However, the plaintiff failed to prove her case against these defendants. The record shows that Geter received extensive medical attention. His condition was not ignored. The fact that the physicians involved may have failed to properly handle this medical situation cannot be imputed to these defendants. Even in the most tragic circumstances, our judicial system cannot award recovery against apparently innocent defendants. Therefore, we must REVERSE.
 
 
 
 *
 Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 Because the plaintiff sued the defendants in their official capacity, this is in effect a suit against Palm Beach County. Official capacity suits are "in all respects other than name, to be treated as a suit against the [governmental] entity." Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Thus, the law governing the liability of governmental entities under Section 1983 controls the liability of the Sheriff and the Director of Corrections in their official capacity. See id. at 166-67, 105 S.Ct. at 3106. See also Brown v. Smith, 813 F.2d 1187, 1187 (11th Cir.1987) (rejecting respondeat superior as a theory of liability for supervisory government officials)
 
 
 [2]
 In the instant case, not only was there a total failure of pleading or proof on the issue of policy, custom or usage, but the record did not contain even a suggestion of fault by the sheriff's office. See Owens v. City of Atlanta, 780 F.2d 1564, 1567 (11th Cir.1986) (holding that "the municipality must be at fault in some sense for establishing or maintaining the policy" or informal custom having the "force of law" which causes the injurious result)
 
 
 [3]
 Appellants also argue that the trial court erred in allowing an award of $100,000 in punitive damages. Because we have determined that the trial court erred in failing to direct the verdict for the defendants, we find this issue moot. However, we note that the Supreme Court has concluded that governmental agencies cannot be held liable for punitive damages in a Section 1983 action. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 272, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981)