Eddie ROY, AIS # 112807, Plaintiff,

v.

Warden Willie JOHNSON,
et al., Defendants.

No. Civ.A. 96–0959–CB–S.

United States District Court,
S.D. Alabama,
Southern Division.

April 4, 2000.

Eddie Roy, Mt. Meigs, AL, Pro se.

Andrew W. Redd, Ellen Ruth Leonard, Montgomery, AL, for Defendants.

## ORDER

BUTLER, Chief Judge.

After due proper consideration of all portions of this file deemed relevant to the issues raised, and a *de novo* determination of those portions of the Report and Recommendation to which objection is made, the Report and Recommendation to which objection is made, the Report and Recommendation of the Magistrate Judge made under 28 U.S.C. § 636(b)(1)(B) is ADOPTED as the opinion of this Court. It is ORDERED that the summary judgment motion of defendants Warden Wille Johnson, Sergeant Preston Davis, and Officer Roy C. Burnham (Docs. 23, 28 & 34) be and is hereby GRANTED and that plaintiff have and take nothing from defendants. It is further ORDERED that plaintiff's action be and is hereby DISMISSED with prejudice.

## REPORT AND RECOMMENDATION

STEELE, United States Magistrate Judge.

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis,*

filed a complaint under 42 U.S.C. § 1983. Plaintiff's action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the Court on Defendants' motion for summary judgment (Docs. 23, 28 & 34). It is recommended that Defendants' motion for summary judgment be granted and that this action be dismissed with prejudice.

## I. *Proceedings.*

### A. *Complaint as Amended (Docs. 1 & 10).*[1]

Plaintiff named Warden Willie Johnson, Sergeant Preston Davis, and Officer Roy C. Burnham as Defendants.[2] Plaintiff's specific claim against each Defendant is brief, but the background facts are involved. Plaintiff's specific claim against Defendant Johnson is described as lack of security because Defendant Burnham was not in cell block 3 when Plaintiff was assaulted on August 7, 1996. Plaintiff alleges a lack of security claim against Defendant Davis because Defendant Davis "would not check and see why officer Burnham wasn't in the cell" at the time of the incident. Plaintiff's lack of security claim against Defendant Burnham is for not being in his cell block 3 at 7:15 p.m. on August 7, 1996, when Plaintiff was assaulted.

The allegations which Plaintiff offers to support his claims in his complaint (Doc. 1) are as follows. Plaintiff alleges that August 7, 1996, while Plaintiff was performing his job as second shift hall cleaner, Officer White ordered Plaintiff to get a mop wringer in order to remove the water from the floor. Plaintiff asserts that he found two mop wringers in dorm 3 with four inmates sitting on them. Plaintiff contends that he asked the inmates if he could use one wringer and Plaintiff was told that they were sitting on them so they could gamble. Plaintiff avers that he told them to tell that to Officer White because he told Plaintiff to get a mop wringer. Plaintiff maintains that inmate Sidney Hill hit him in the face with a lock that was wrapped around his index finger, inmate Cleveland Johnson stuck him with a knife, another inmate kicked him in the mouth, and another inmate "went under him."

Plaintiff claims that he ran to the grill gate in cell block 3 and hollered at Defendant Burnham who was in the hall that he needed to go to the hospital. Plaintiff alleges that Defendant Burnham told Plaintiff to get away from the door and that Plaintiff responded, "Don't you see all this blood on me?" Plaintiff alleges that Defendant Burnham then let Plaintiff leave and told him to report to the lieutenant's office.

Plaintiff maintains that Lt. Williams and Defendant Davis told Plaintiff to sit and wait until Defendant Burnham came to the office even though Plaintiff told Lt. Williams that he needed medical attention badly because his face was bleeding. Plaintiff contends that they would not let him leave until he told them who beat him. Plaintiff states that he waited about five to six minutes before Defendant Burnham

---

**1.** The Court is treating plaintiff's complaint (Doc. 1) as a sworn affidavit because it was signed under penalty of perjury. *Sammons v. Taylor*, 967 F.2d 1533, 1545 n. 5 (11th Cir. 1992); *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir.1986). Nevertheless, a verified complaint's allegations are subject to the scrutiny that an affidavit receives from a court when a court is considering a summary judgment motion, i.e., conclusory statements of ultimate facts, conclusions of law, and statements unsupported by personal knowledge are not considered competent evidence to defeat summary judgment. *See Murrell v.*

*Bennett*, 615 F.2d 306, 310 n. 5 (5th Cir. 1980). However, Plaintiff states in his self-styled amendment (Doc. 10) that he swears to God that every word of his amendment is true. The Court notes that the amendment was neither notarized, nor did Plaintiff explicitly state that it was signed under penalty of perjury.

**2.** Lieutenant Clifford Williams was also named as a Defendant, but was previously dismissed from this action (Docs. 32 & 33).

came and then Defendant Davis wrote a pass for Plaintiff to report to the hospital.

Plaintiff alleges that he went unescorted to the hospital where upon arriving he described the four assailants to Officer Hinsley while the nurses were attending his injured face and mouth. Plaintiff avers that Officer Hinsley advised Lt. Williams of Plaintiff's descriptions of the inmates, and that four inmates were produced for Plaintiff's identification, two of which Plaintiff identified as assailants. Plaintiff asserts that the next day while in the hospital, the warden asked him what happened and whether the officers had caught all of the assailants. Plaintiff advises that he told the warden what happened and that he did not know whether all of the assailants had been caught. Plaintiff alleges that when he was released from the hospital seven days later, two of the four inmates were in disciplinary segregation and the other two inmates were at large.

Plaintiff asserts that he received a disciplinary from Defendant Burnham for fighting without a weapon. Plaintiff contends that the warden was told by Defendant Burnham that Plaintiff was the reason that the fight started. Plaintiff maintains that after he was released from the hospital, he was placed in segregation and was told to sign a living agreement with one of the inmates or Plaintiff would be locked up for not signing. Plaintiff complains that a week later Defendant Burnham was assigned to Plaintiff's cell and that all of the four inmates were placed in population causing Plaintiff to feel that his life was in jeopardy.

In Plaintiff's amendment (Doc. 10), he alleges that he has been at Fountain Correctional Facility (Fountain) since 1995, and has suffered a stroke and has been diagnosed as having degenerative disc disease and hypoglycemia. Plaintiff asserts that since he was assaulted in August,

1996, and has filed this action, he has been subjected to cruel and unusual punishment, that is, he was placed in investigative segregation, disciplinary segregation, and protective custody. Plaintiff contends that he told officials that his life was in danger, but he was sent back into population with the inmates who assaulted him. Plaintiff avers that in August, 1996, he received no medical treatment for the hole on the inside of his cheek because he cannot pay the $3.00 charge.

Plaintiff states that he must sneak his mail out of the prison or it will be lost or destroyed. Plaintiff asserts that he sends a copy of his mailings to his mother because he does not believe that he will get out alive. Plaintiff also avers that his special diet has been discontinued.

Plaintiff alleges that because he has reported problems and threats made against him, Plaintiff has been labeled a "snitch" which resulted in numerous inmates threatening to kill him because of his "snitch" status. Plaintiff states that he bought a knife to protect himself. Plaintiff maintains that he turned in the knife pursuant to Officer Lashley's instructions and he was placed in investigative segregation with a disciplinary for possession of a knife. Plaintiff alleges that the lieutenant told "them" to put Plaintiff in protective custody; instead, however, Plaintiff received a disciplinary from Officer Lashley which was ordered by the lieutenant. Plaintiff claims to have told the warden about this. Plaintiff asserts that his classification supervisor changed his custody level from minimum 9 to security level 5 or 6 even though the warden requested her not to do so. Plaintiff alleges that he was placed in protective custody and has been waiting for a transfer since January 10, 1997.[3]

The claims which are contained in the complaint (Doc. 1) and its amendment

---

**3.** On February 12, 1997, Plaintiff notified the Court that he was transferred from Fountain to Staton Correctional Facility (Doc. 15), and then to Easterling Correctional Facility in March, 1997 (Doc. 16).

(Doc. 10) will be addressed by the Court. The Court is required by the Federal Rules of Civil Procedure to address only those claims brought before the Court in a properly supported motion to amend the complaint. *Long v. Satz,* 181 F.3d 1275, 1279 (11th Cir.1999).

### B. *Posture of the Action.*

The Court converted Defendants' Special Report (Doc. 23), Supplemental Special Report (Doc. 28), and Answer (Doc. 34) into a motion for summary judgment (Doc. 44). Plaintiff was given notice that the motion for summary judgment would be taken under submission, was advised of the pertinent summary judgment law and of the consequences of a summary judgment motion, and was provided an opportunity to respond to the summary judgment motion (Doc. 44). Plaintiff filed a response, titled "In Response to Court Order Order Converting the Special Report to a Motion for Summary Judgment and Taking the Motion for Summary Judgment Under Submission [sic]" (Doc. 46), which is notarized, but is not sworn to by Plaintiff for the truthfulness of the statements that he makes. *Pfeil v. Rogers,* 757 F.2d 850, 859 (7th Cir.), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986); *Dickinson v. Wainwright,* 626 F.2d 1184, 1185 (5th Cir.1980).[4] Therefore, Plaintiff's unsworn statements do not constitute evidence that the Court may consider on summary judgment and that could be deemed to create a genuine issue of material fact.

### II. *Applicable Law.*

#### A. *Summary Judgment Standards.*

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted:

if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). A factual dispute is " 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." *Id.; accord, Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 998 (11th Cir.), *cert. denied,* 507 U.S. 911, 113 S.Ct. 1259, 122 L.Ed.2d 657 (1993).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. at 2512. The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the Court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993); *Tipton,* 965 F.2d at 989–999. "If reasonable minds could differ on the inferences arising from undisputed facts, then a court must deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir.1992) (citing *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.,* 750 F.2d 838, 841 (11th Cir.1985)), *modified on other grounds Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1019 n. 1 (11th Cir.1994). In addition to demonstrating that there is no genuine issue of material fact, the movant must also satisfy

---

**4.** The Eleventh Circuit in *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), adopted as binding precedent of

the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

the ultimate burden of persuasion on the claim by showing that it would be entitled to a directed verdict at trial. *Fitzpatrick,* 2 F.3d at 1116.

Once the movant satisfies its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with specific facts showing that here is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis omitted). Otherwise stated, in order to preclude summary judgment, the nonmovant must "show the existence of a genuine issue as to a material fact." *Fitzpatrick,* 2 F.3d at 1116. "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton,* 965 F.2d at 998 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (quoting *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513 (citing *Adickes,* 398 U.S. at 158–159, 90 S.Ct. at 1608–09)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (quotation marks and citation omitted).

Moreover, the non-movant bears "the burden of coming forward with sufficient evidence on *each element* that must be proved." *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990) (emphasis in original) (citation omitted). If "a party ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial[,]" Rule 56(c) mandates that summary judgment be entered against the non-movant. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### B. *Eighth Amendment Law.*

The Eighth Amendment protects a prisoner from cruel and unusual punishments and thereby imposes a duty on officials to protect an inmate from an attack from another inmate. *Farmer v. Brennan,* 511 U.S. 825, 832–33, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). However, not every injury suffered by an inmate at the hands of another inmate is a result of a violation of the Constitution. *Id.* at 834, 114 S.Ct. at 1977.

■ The Eighth Amendment is only violated by "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate[.]" *Id.* at 828, 114 S.Ct. at 1974. This standard requires first that the alleged deprivation be, objectively, "sufficiently serious." *Id.* at 834, 114 S.Ct. at 1977 (quoting *Wilson [v. Seiter,* 501 U.S. 294,] 298, [111 S.Ct. 2321,] 2324, [115 L.Ed.2d 271 (1991) ]; citations omitted). The deprivation must be "the denial of 'the minimal civilized measure of life's necessities[.]' " *Id.* (quoting *Rhodes [v. Chapman,* 452 U.S. 337,] 347, [101 S.Ct. 2392,] 2399, [69 L.Ed.2d 59 (1981) ] ). In the situation where an inmate complains about being attacked by another inmate, the inmate must establish that the conditions under which he was incarcerated presented "a substantial risk of serious harm." *Id.* (citation omitted).

■ Secondly, this standard requires that the prison official be deliberately indifferent to the substantial risk of serious harm to the inmate. *Id.* Deliberate indifference requires

that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of

confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837, 114 S.Ct. 1970, 114 S.Ct. at 1979. This element of an Eighth Amendment violation is subjective. *Id.* at 839, 114 S.Ct. at 1980. It is not required that a prison official know " 'precisely who will attack whom,' (citation omitted), but only that the prison official had subjective knowledge of a generalized, substantial risk of serious harm from inmate violence. (Citation omitted.)" *Hale v. Tallapoosa County,* 50 F.3d 1579, 1583 (11th Cir.1995) (quoting *Farmer,* 511 U.S. at 843, 114 S.Ct. at 1982). The inmate's failure to provide advance notice of an attack is relevant, but not dispositive. *Id.* (citing *Farmer,* 511 U.S. at 849, 114 S.Ct. at 1984).

Furthermore, if prison officials knew of a substantial risk of serious harm, they may be exonerated from liability

> if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," (citations omitted), a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions." (citations omitted) Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.

*Farmer,* 511 U.S. at 844–45, 114 S.Ct. at 1982–83.

■ Thus, when an inmate is confronted with a defendant's properly supported summary judgment motion, the inmate in order "to survive summary judgment on his section 1983, Eighth Amendment claim, [is] required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference

to that risk; and (3) causation." *Hale,* 50 F.3d at 1582 (citing [*Farmer,* 511 U.S. at 828, 114 S.Ct. at 1974], and *LaMarca v. Turner,* 995 F.2d 1526, 1535 (11th Cir. 1993), *cert. denied,* [510] U.S. [1164], 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994)). Each element must be proven in order to prevail on an Eighth Amendment claim. *La Marca,* 995 F.2d at 1535.

### III. *Discussion.*

Defendants have borne their summary judgment burden by pointing out to the Court that Plaintiff's pleadings have failed to state a claim upon which relief can be granted (Docs. 23, 28 & 34). In analyzing Plaintiff's claims, the Court agrees with Defendants that Plaintiff has failed to establish at summary judgment all of the required elements of his § 1983 claims.

The Court will address only those claims which are causally connected to a Defendant in the complaint as amended (Docs. 1 & 10). *See Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir.1986) (finding that a plaintiff must establish a causal connection between a defendant's actions, orders, customs, policies, or breaches of statutory duty and a deprivation of the plaintiff's constitutional rights in order to state a claim upon which relief may be granted in a § 1983 action); *Williams v. Bennett,* 689 F.2d 1370, 1380 (11th Cir.) (same), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983). Most of Plaintiff's allegations in the amendment (Doc. 10) are not connected to a Defendant; therefore, the Court will not discuss the unconnected allegations because they fail to state a claim upon which relief may be granted. *See GJR Investments, Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir.1998) (holding that even though the court should show some leniency to a *pro se* litigant, "this leniency does not give a court license to serve as *de facto* counsel for a party ..., or to re-write an otherwise deficient pleading in order to sustain an action...." (citations omitted)).

## A. *Claim Against Defendant Burnham.*

In the complaint (Doc. 1), Plaintiff has identified his claim against each Defendant as a claim for lack of security. Plaintiff claims that Defendant Burnham was not in his assigned cell block when Plaintiff was assaulted in cell 3 on August 7, 1996, at 7:15 p.m. (Doc. 1). In his sworn affidavit, Defendant Burnham states: "At the time inmate Roy was involved in the above mentioned incident my assigned duties were to monitor dormitories three and four. Inmates Roy's allegation is not true" (Doc. 23). Defendant Burnham relates that his investigation revealed that Plaintiff was involved in fight with some inmates over several packs of cigarettes that Plaintiff had borrowed from an inmate, but had failed to repay (Burnham's Aff.). Defendant Burnham advises that even though Plaintiff was aware of the repercussions, Plaintiff failed to make any prison official aware of his situation and he did not request "safe keeping" (Burnham's Aff.).

The incident report reflects that Plaintiff stated that the altercation occurred at the rear of dorm 3 near the rear television area when he went to get a mop wringer (Incid.Rpt.). Plaintiff did not reveal the names of the inmates, but stated that he was hit and knocked to floor by an inmate, kicked by another inmate, and saw another inmate with a knife, and then got up and ran to the front grill gate (Incid.Rpt.). Defendant Burnham's investigation revealed that inmate Sidney Hill started the fight and admitted that he "whipped [Plaintiff's] ass and I'll do it again" because the day before Plaintiff did not pay him the cigarettes that Plaintiff owed him (Incid. Rpt.; Hill's statement). Plaintiff's written statement reflects that he was attacked by three inmates because he did not timely repay the nine packs of cigarettes to "Silk" and he asked for the wringer too boldly (Pltf's statement).

Body charts were done on Plaintiff and on inmates Hill and Walker (Incid.Rpt.).

Plaintiff's body chart and medical report indicates that he had swollen left eye, a 1 ⅛ inch laceration below his left eye, a laceration on his inner lip, four loose teeth, and a small amount of bleeding (Chart & Med. Rpt.). Plaintiff's lacerations were cleaned and then closed with steri-strips, and he was given an ice pack for his swollen eye and lip (Med.Rpt.). Plaintiff was placed on the hospital ward, and inmates Hill and Walker were placed in segregation (Incid.Rpt.). Plaintiff and inmate Hill were charged with fighting without a weapon, and inmate Walker was not charged (Incid.Rpt.).

The medical records reflect that Plaintiff was on the hospital ward from August 7, 1996, to August 14, 1996 (Doc. 28, Med.Records). On August 13, 1996, x-rays were taken of Plaintiff's face which revealed that Plaintiff previously sustained a gunshot wound to the right side of his face which had left fragments (Med.Records). Dr. Rowell's x-ray report states that there was soft tissue swelling around the infraorbital rim of the left eye with some change in the lateral and infraorbital wall of the sinus and that fractures are suspected even though the age could not be determined (Med.Records). Then, an x-ray was taken of Plaintiff's mandible on August 15, 1996, which indicated that there was no evidence of a fracture of the mandible (Med.Records). Due to Plaintiff's complaints of numbness to the left side of his face, on August 20, 1996, another skull series of x-rays were taken, which showed:

There is deformity of the lateral wall of the left maxillary sinus as well as the inferior orbital rim on the left. These have the appearance of old fractures. There has been no significant change in the appearance of these fractures when compared to the study of 8/12/96. An acute fracture is not visualized. The sinuses themselves appear clear.

Skull:

There is no evidence of fracture or calvarial defects . . . .

IMPRESSION: NORMAL SKULL....

Thomas J. Payne, III, M.D. (Med.Records)

In Plaintiff's response to the summary judgment motion (Doc. 46), Plaintiff states that according to the *Pugh* decision[5] an officer is to stay in the dorm at all times, and not in the hallways, and that in response to Plaintiff's written questions in the disciplinary proceeding, which plaintiff attached, Defendant Burnham indicated that he was standing in the hall when the fight occurred, that he did not see the fight, that he was at the grill gate to cell 3 when Plaintiff requested to leave the cell, and that he was on his post in the main hall when the fight started. These answers to Plaintiff's written questions, however, were not signed by Defendant Burnham.

### 1. *Substantial Risk of Serious Harm Element.*

 The first element of an Eighth Amendment claim requires that Plaintiff must establish that the conditions under which he was incarcerated presented a "substantial risk of serious harm." *Farmer*, 511 U.S. at 832, 114 S.Ct. at 1977. The only evidence offered by Plaintiff that can be considered as being directed to this element is that Defendant Burnham was not at his post when the fight occurred in dorm 3 (Doc. 1). Defendant Burnham disputes this allegation, stating that he was on his post which was to monitor dorms 3 and 4 (Doc. 23, Burnham's affidavit). The undisputed fact that Defendant Burnham opened the grill gate to cell 3 to let Plaintiff leave tends to bolster Defendant Burnham's position that he was at or near his assigned post (Doc. 23, Incid. Rpt.; Doc. 1) More importantly, Plaintiff's allegations do not inform the Court of the layout of dorms 3 and 4, or where Defendant Burnham's post was in relation to the dorm where the fight occurred, and whether there are other officers present in the dorms or monitoring the dorms.

Even though Plaintiff did not provide information in his complaint as amended about his cigarette transaction with inmate Hill (Docs. 1 & 10), Plaintiff did not dispute Defendants' contentions that the reason for the fight was the prior cigarette transaction with inmate Hill (Doc. 23, Affidavits & Indic. Rpt.). However, Plaintiff admitted in a written statement that he had this cigarette transaction with inmate Hill which caused him to be "jumped" by three inmates (Doc. 23, Incid.Rpt.). Furthermore, each Defendant states that "In-

---

**5.** Based on a review of Plaintiff's allegation, it is evident that Plaintiff is not aware of the status of *Pugh v. Locke,* 406 F.Supp. 318 (M.D.Ala.1976). The injunction entered in *Pugh* and related cases is no longer in effect.

The prison reform actions of *Pugh v. Locke, supra, James v. Wallace,* 382 F.Supp. 1177 (M.D.Ala.1976), and *Newman v. Alabama,* 349 F.Supp. 278 (M.D.Ala.1972), were consolidated on appeal in *Newman v. Alabama,* 559 F.2d 283 (5th Cir.1977). *Accord Newman v. Alabama,* 683 F.2d 1312, 1315 (11th Cir.), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983). In *Newman v. Alabama,* Civil Action No. 3501–N (M.D.Ala.1988), on December 28, 1988, an Order was entered by United States District Judge Varner dismissing with prejudice the *Newman* action.

In a lengthy memorandum opinion which was appended to the Order, the court found that the conditions present in the prison system in 1972 and 1976 no longer existed. Thus, the court dissolved the injunction and returned the prison system to the officials of the State of Alabama (Order, p. 1). The court then reasoned that the injunction may no longer serve as a basis for lawsuits and that future litigation must proceed for violations of the Constitution, and not for violations of the injunction. Moreover, the court noted in its opinion that its prior mandates were not necessarily constitutionally based, e.g., the Constitution does not require three meals a day, *Hamm v. DeKalb County,* 774 F.2d 1567, 1575 (11th Cir.1985), *cert. denied,* 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894. 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986), which the Court had previously ordered in *Pugh, supra.* Therefore, in view of the fact that *Pugh v. Locke, supra,* has been dismissed with prejudice, Plaintiff cannot rest his claims on violations of mandates issued in *Pugh* or in *Newman.*

mate Roy failed to inform any supervisor or correctional officer of his situation, nor did he request safe keeping." (Doc. 23, Affidavits) Plaintiff has not contradicted these statements. Moreover, absent from Plaintiff's complaint as amended are allegations concerning the general security of Fountain. Therefore, the Court is left to deduce that the atmosphere at Fountain at the time of the incident was a typical prison atmosphere. *See Farmer,* 511 U.S. at 832, 114 S.Ct. at 1977 (recognizing that persons incarcerated at prisons have previously demonstrated "antisocial, criminal, and often violent conduct") (citation omitted).

Considering Plaintiff's evidence and the lack thereof, the Court concludes that Plaintiff has failed to produce evidence from which reasonable jurors could find that Plaintiff was subjected to conditions which presented "a substantial risk of serious harm." *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977; *see Hale,* 50 F.3d at 1583 (finding that the evidence of overcrowding and assaults that occurred at and preceding the time of incident would lead a reasonable jury to conclude that a substantial risk of serious harm existed at the jail); *LaMarca v. Turner,* 995 F.2d 1526, 1535 (11th Cir.1993) (holding that an unjustified constant and unreasonable exposure to violence satisfied the element that the inmates were exposed to a condition of confinement that inflicted unnecessary pain or suffering).

### 2. *Deliberate Indifference Element.*

■ Plaintiff is also required to establish that Defendant Burnham was deliberately indifferent. The only evidence directed to this element is Plaintiff's allegation that Defendant Burnham was not at his post when the incident occurred, which is contested by Defendant Burnham. This allegation alone is insufficient to establish deliberate indifference. Assuming without deciding that Defendant Burnham was not at his post when the incident occurred, Plaintiff's lone allega-

tion only indicates that Defendant Burnham's action was negligent, at best, if true. However, no liability can be imposed in a § 1983 action for negligent acts. *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). Accordingly, the Court finds that Plaintiff's evidence is insufficient on the issue of whether Defendant Burnham was deliberately indifferent. *Hale,* 50 F.3d at 1582 (finding that the guard's failure to make a round when the assault occurred was "insufficient to support the level of deliberate indifference and causal connection necessary to hold [the guard] personally responsible."). Therefore, reasonable jurors would not be able to find for Plaintiff on the element of deliberate indifference. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

### 3. *Causation Element.*

■ In addition to the requirement that Plaintiff establish these two prior elements for a successful Eighth Amendment claim, Plaintiff must also establish causation. *Hale,* 50 F.3d at 1582. That is, Plaintiff must establish that Defendant Burnham's deliberate indifference to a substantial risk of serious harm caused Plaintiff's injuries. Notwithstanding the fact that Plaintiff has failed to establish the prior two elements, Plaintiff's evidence does not establish the necessary element of causation. Plaintiff's evidence does not conclusively show that Defendant Burnham's actions were the cause of his injuries. Rather, the evidence indicates that other inmates with whom Plaintiff had been involved in an unsatisfactory cigarette transaction were the chief cause of Plaintiff's injuries. The evidence reveals that Defendant Burnham was unaware of any potential risk to Plaintiff by these other inmates.

Due to Plaintiff's failure to establish with sufficient evidence each of the three elements of an Eighth Amendment claim, the undersigned finds that summary judgment is due to be granted Defendant Burnham. *Anderson,* 477 U.S. at 251, 106

S.Ct. at 2512; *Killian v. Holt*, 166 F.3d 1156, 1157 (11th Cir.1999).

### B. *Claim Against Defendant Davis.*

Plaintiff alleges that Defendant Davis, a sergeant, "would not check and see why officer Burnham wasn't in the cell" (Doc. 1). In Plaintiff's description of his claims, he has not developed this claim with additional facts. Thus, the Court is uncertain whether Plaintiff is alleging that Defendant Davis was Defendant Burnham's supervisor who was supposed to check on the officers guarding inmates to ensure that they were at their posts performing their duties, or whether Plaintiff is asserting that after the incident Defendant Davis did not investigate to determine whether Defendant Burnham was at his post when the incident occurred.

 Assuming *arguendo* that Plaintiff intended to allege the former claim, Plaintiff has failed to state a claim upon which relief may be granted against Defendant Davis. In a § 1983 action, a supervisor may not be held liable solely on the basis of his employee's acts. *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir.1985) (comparing the position of a supervisor to a municipality which may have liability imposed through its customs or policies, but not through employees' actions); *see generally Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (discussing municipality liability). In order to state a § 1983 claim against a supervisor for failure to supervise, a plaintiff "must present some evidence that the [defendant] knew of a need to train and/or supervise in a particular area and the defendant made a deliberate choice not to take any action[,]" that this failure to train and/or supervise constitutes a custom or policy, and that the failure to train and/or supervise was the moving force behind the deprivation of a constitutional right. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir.1998); *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 389, 109 S.Ct.

1197, 1203, 1205, 103 L.Ed.2d 412 (1989); *McKinney by McKinney v. DeKalb County, Ga.*, 997 F.2d 1440, 1443 (11th Cir. 1993). Because the Court has found that there was no violation of Plaintiff's Eighth Amendment rights based on the assault of August 7, 1996, Plaintiff has failed to establish that the failure to supervise was the moving force behind the deprivation of a constitutional right. Thus, Plaintiff has failed to establish an essential element of a § 1983 supervisory claim. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552. Moreover, the latter claim based on Defendant Davis's failure to investigate the incident fails to present a claim for a violation of a constitutional right and, therefore, fails to establish an essential element of a § 1983 action. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981) (holding that an essential of a § 1983 action is a violation of "rights, privileges, or immunities secured by the Constitution or laws of the United States"), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986). Accordingly, the undersigned determines that summary judgment is due to be granted to Defendant Davis for Plaintiff's failure to establish an essential element of § 1983 claim. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552.

### C. *Claims Against Defendant Johnson.*

 Plaintiff's claim against Defendant Johnson is for lack of security based on Defendant Burnham not being in the cell block when Plaintiff was assaulted on August 7, 1996 (Doc. 1). This claim seeks to impose liability on Defendant Johnson for the acts or omissions of his subordinate. In a § 1983 action, however, a supervisory official cannot have liability imposed solely on the basis of his subordinate's acts or omissions. A supervisory official can only have liability imposed if he was personally involved in a constitutional deprivation or if his custom or policy caused the constitutional deprivation. *Geter v. Wille*, 846

F.2d 1352, 1354 (11th Cir.), *cert. denied,* 488 U.S. 1043, 109 S.Ct. 870, 102 L.Ed.2d 994 (1989); *McLaughlin v. City of La-Grange,* 662 F.2d 1385, 1388 (11th Cir.), *cert. denied,* 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982). Inasmuch as Defendant Johnson was not personally involved, and there has been no showing that a custom or policy of Defendant Johnson was involved, Plaintiff has failed to establish an element of a § 1983 action. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552.

■■■ In his amended complaint (Doc. 10), the only Defendant referenced is "the warden" who the Court knows to be Defendant Johnson. The only allegation which is connected to the warden is Plaintiff's claim that he reported to the warden that his classification supervisor contemplated changing Plaintiff's custody from minimum 9 to a security level 5 or 6, and that the warden requested the classification supervisor not to make this change (Doc. 10, p. 3). Plaintiff does not indicate in his amended complaint whether his custody level was changed. Regardless of whether there was a change, the allegations evince that Defendant Johnson intervened on Plaintiff's behalf with the classification personnel not to change Plaintiff's custody.[6] Therefore, the undersigned finds that Plaintiff has failed to establish that Defendant Johnson violated Plaintiff's constitutional rights. *See Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976) (holding that an inmate has no right inherent in the Constitution to a certain classification). Thus, Plaintiff has failed to establish an essential element of a § 1983 claim against Defendant Johnson. *Parratt,* 451 U.S. at 535, 101 S.Ct. at 1913 (holding that an essential element of a § 1983 action is a violation of "rights, privileges, or immunities secured by the Constitution or laws of the United States"). Summary judgment is, therefore, due to be entered for Defendant Johnson on these claims. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552.

## IV. *Conclusion.*

Based upon the foregoing reasons, it is recommended that Defendants' motion for summary judgment (Docs. 23, 28 & 34) be granted and that this action be dismissed with prejudice.

The attached sheet contains important information regarding objections to the Report and Recommendation entered this date.

February 16, 2000.

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. *Objection.* Any party who objects to this recommendation, or anything in, it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this Court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith,* 855 F.2d 736, 738 (11th Cir.1988); *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

6. Attached to Defendants' Supplemental Report (Doc. 28) is an interview record which indicates that on January 8, 1997, Defendant Johnson voided Plaintiff's disciplinary for possession of a weapon, placed Plaintiff in protective custody, and wrote a letter to the prison commissioner to expunge Plaintiff's disciplinary, which was granted. Subsequently, Defendant Johnson recommended the transfer of Plaintiff from protective custody at Fountain to Staton Correctional Facility. *See also* Classification Progress Review dated February 21, 1997 (Doc. 28).

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. *Transcript (applicable Where Proceedings Tape Recorded).* Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.